[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION FOR SUMMARY JUDGMENT #103
On September 6, 2001, the plaintiff, Joyce Vlaun, as administrator of Margaret Stubelick's estate, filed a single count complaint against the defendant, Commercial General Union Insurance Company (CGU), formerly known as General Accident Insurance Company of America. The complaint arose from an automobile accident which occurred on August 21, 1998, which resulted in the death of Margaret Stubelick who was a passenger in CT Page 10343 a motor vehicle driven by her husband, Adam Stubelick. The other motor vehicle involved in the accident was driven by Albert Sousa. The plaintiff recovered the full limit of Sousa's automobile liability policy, $50,000. Margaret Stubelick and Adam Stubelick were insured under an automobile policy issued by CGU with a limit of liability of $100,000. On August 8, 1999, the plaintiff and CGU entered into a release and settlement agreement wherein the parties agreed that the fault of the collision was nearly equal between Adam Stubelick and Albert Sousa. CGU paid the plaintiff $100,000 pursuant to the limit of liability under Part A, the liability portion of the policy. The release and settlement agreement, however, did not release CGU from any liability it may have under Part C of the policy for uninsured/underinsured motorist coverage.[1] The plaintiff brings this action against CGU claiming entitlement to underinsured motorist benefits.
CGU filed a motion for summary judgment on February 8, 2002, arguing that no genuine issue of material fact exists and it is entitled to judgment as a matter of law because (1) CGU has already paid its limit of liability to the plaintiff; (2) CGU is entitled to a reduction for the amount it has already paid to the plaintiff which leaves nothing more to be paid; and (3) the Stubelick vehicle was not underinsured at the time of the accident and, therefore, the plaintiff is not entitled to underinsured motorist benefits. CGU has submitted a copy of the personal automobile liability insurance policy maintained by the Stubelicks including a copy of the declarations sheet and a copy of the release and settlement agreement in support of its motion for summary judgment.
The plaintiff filed a memorandum in opposition on April 15, 2002. The plaintiff argues that she is entitled to recover underinsured motorist benefits because the Sousa vehicle, covered under a policy with a liability limit of $50,000, which is less than the $100,000 of coverage available under the underinsured motorist provisions, is therefore underinsured. The plaintiff also contends that payment of underinsured motorist benefits would put her in the same position she would have been in had Sousa had the same coverage and, therefore, it would not result in a duplicate payment. Additionally, the plaintiff argues that the terms of the policy are ambiguous because the declarations page and the endorsement language are in direct conflict with CGU's stated position, thereby creating ambiguous policy language which must be construed against CGU.
 DISCUSSION
A "motion for summary judgment is designed to eliminate the delay and expense of litigating an issue then there is no real issue to be tried."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). Summary CT Page 10344 judgment procedure "is an attempt to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full-dress trial." (Internal quotation marks omitted.)Mac's Car City, Inc. v. American National Bank, 205 Conn. 255, 261,532 A.2d 1302 (1987). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) Appleton v. Board of Education, 254 Conn. 205, 209,757 A.2d 1059 (2000).
"Although compensating the victim of an underinsured motorist as if the tortfeasor were adequately insured is a general public policy objective of the uninsured motorist statute . . . other policy considerations preclude conferring the selfsame rights on both the victim of an adequately insured tortfeasor and the victim of an inadequately insured tortfeasor. . . . [T]he plain words of. . . . [General Statutes §38a-336] simply require that each policy provide a minimum level ofuninsured [and underinsured] motorist coverage for the protection of persons insured thereunder. The statute does not require that uninsured motorist coverage be made available when the insured has been otherwise protected. . . . Nor does the statute provide that the uninsured motorist coverage shall stand as an independent source of recovery for the insured, or that the coverage limits shall not be reduced under appropriate circumstances. The statute merely requires that a certain minimum level of protection be provided for those insured under automobile liability insurance policies. . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) Vitti v.Allstate Ins. Co., 245 Conn. 169, 183-84, 713 A.2d 1269 (1998).
"In addition to the statute's primary policy objective of providing some minimum level of compensation for the victims of inadequately insured motorists by assuring that they are compensated in an amount equal to the level of their own uninsured motorist coverage . . . §38a-334-6 (d) of the [R]egulations [of Connecticut State Agencies] furthers the additional policy objective of adhering to the time-honored rule that an injured party is entitled to full recovery only once for the harm suffered. . . . In accomplishing the myriad and difficult policy objectives inherent in the uninsured and underinsured motorist coverage statute, the legislature expressly left to the sound discretion of the insurance commissioner the authority to develop regulations pertaining to exclusions, including appropriate reductions to the limits of liability. . . . [I]t expressly has been left to the commissioner to determine whether an alternative source of recovery available to the CT Page 10345 insured should be an applicable offset. . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 186-87.
"Accordingly, the general objective of equivalent recovery is limited by an insurer's regulatory authority to reduce the limits of liability as permitted by § 38a-334-6 (d), as long as the insured retains a minimum level of protection as mandated by statute. . . . In the underinsured motorist coverage context, the minimum amount of compensation that the insured is entitled to receive is equivalent to the amount of underinsured motorist protection that the insured carried." (Citations omitted.) Id., 185.
Section 38a-334-6 (d)(1) of the Regulations of Connecticut State Agencies provides in relevant part that "[t]he limit of the insurer's liability may not be less than the applicable limits for bodily injury liability . . . except that the policy may provide for the reduction of limits to the extent that damages have been . . . paid by or on behalf of any person responsible for the injury. . . ." Margaret Stubelick's policy does provide for such a reduction. The policy provides: "The limit of liability shall be reduced by all sums . . . [plaid because of the `bodily injury' by or on behalf of persons or organizations who by be legally responsible. This includes all sums paid under Part A. . . ."
In the present case, it is undisputed that the plaintiff has received compensation "paid by or on behalf any person responsible for the injury." Regs., Conn. State Agencies § 38a-334-6 (d)(1). It is agreed that both Adam Stubelick and Sousa were equally responsible for the plaintiffs decedent's injuries. From these responsible parties, the plaintiff has received a total of $150,000-$100,000 paid by CGU on behalf of Adam Stubelick pursuant to his automobile liability policy and $50,000 paid on behalf of Sousa pursuant to his automobile liability policy. Section 38a-334-6 (d)(1) together with the policy language expressly authorizes CGU to deduct these payments from the limit of liability for underinsured motorist coverage; Grimotes v. Baker, Superior Court, judicial district of New London at New London, Docket No. 555209 (September 21, 2001, Hendel, J.); thereby reducing its liability in the present case to zero. Because the plaintiff has already recovered an amount in excess of the underinsured motorist coverage benefits available to her, the legislative intent of ensuring a minimum level of protection for the injured party has been fulfilled. "The legislature has made clear that the goal is minimum coverage, not maximum recovery up to the full extent of the plaintiffs injuries." Vitti v. Allstate Ins. Co., supra,245 Conn. 186 n. 17. "Consequently, the plaintiff here must by compensated, from all available sources, in the amount . . . equal to the plaintiffs coverage." (Emphasis added.) Id., 189-90; see also Guidi v.Mitchell, Superior Court, judicial district of Fairfield at Bridgeport, CT Page 10346 Docket No. 349744 (November 9, 1999, Nadeau, J.) (in action involving two tortfeasors, one insured and the other uninsured, with varying degrees of culpability for accident, victim entitled to receive in uninsured motorist benefits difference, if any, between uninsured motorist coverage limit and what victim received from insured tortfeasor). It is clear that the plaintiff has been so compensated.
For the foregoing reasons, the court finds that the plaintiff is not entitled to any underinsured motorist benefits from CGU. Accordingly, CGU's motion for summary judgment is granted.
 _______________________ D. Michael Hurley, JTR